In the Matter of the Application of the CITY OF ROCHESTER to Acquire Land for the Extension of Monroe Avenue in Said City.

FRANCES A. VAN VOORHIS, Appellant; THE CITY OF ROCHESTER, Respondent.

Fourth Department, November 7, 1929.

*Eugene Van Voorhis*, for the appellant.

*Charles B. Forsyth, Assistant Corporation Counsel* [*Clarence M. Platt, Corporation Counsel*, with him on the brief], for the respondent.

EDGCOMB, J. In 1924 the city of Rochester instituted the above-entitled proceeding in the Monroe County Court to acquire, by condemnation, the requisite amount of land to enable it to extend Monroe avenue from South street to South avenue. The new street

was to run in an easterly and westerly direction, and was to be eighty-six and seventy-three one-hundredths feet wide. The property necessary to be acquired for such improvement was owned by various corporations and individuals. The proceeding was brought under the provisions of the charter of the city relating to condemnation proceedings. (See Laws of 1907, chap. 755, § 436 *et seq.*, as amd.) The preliminary maps were filed in the offices of the city clerk and the Monroe county clerk. The required notice of application for the appointment of commissioners to ascertain and determine the compensation which ought justly to be made to the owners of the real property indicated on said maps, and sought to be taken, was published, as required by the city charter, and on the return day such commissioners were duly appointed. The court gave the city permission to take immediate possession of the property sought to be condemned, and the work of opening and paving the street was pushed to completion, and the highway was thrown open to the public in 1925, and has been in general use ever since.

Various hearings were had before the commissioners, and an award was made and paid to part of the owners, and the evidence closed and the matter submitted as to others. There is a finding that an assessment roll, levying the expenses of the improvement of the street against the property benefited, was filed by the assessors in 1926, and that the assessments have been made and have become a lien upon the property of appellant and the other persons benefited.

The city succeeded in purchasing one piece of property needed for this improvement. This parcel had a frontage on South street of sixty-three and one-tenth feet, and a depth of one hundred and sixty-five feet. Of this frontage, however, only forty-five feet lay within the street line as laid out. The other eighteen and one-tenth feet extended beyond the northerly line of the highway. So that the city owns an excess strip of land eighteen and one-tenth feet on South street and one hundred and sixty-five feet on the new street, which was neither needed nor used for this public improvement.

Adjoining this surplus land on the north is a private alleyway, known as Cheney place, sixteen feet in width, running westerly from South street to about the middle of the block, parallel with and approximately eighteen feet from the extension of Monroe avenue. Nowhere does it touch the new street.

In 1926, after the condemnation proceedings had proceeded as above outlined, it occurred to the city that if it could acquire title to Cheney place and add it to the surplus land which it already owned, it would then have a lot thirty-four and one-tenth feet on

South street and one hundred and sixty-five feet on Monroe avenue, which would be suitable for building purposes, and which it might sell at a profit, and thus realize something to apply upon the expense incurred in opening Monroe avenue. Mrs. Van Voorhis, the appellant, owned a perpetual easement in Cheney place. Negotiations to purchase her interest were unavailing, and the city commenced proceedings, under its charter, to acquire it by condemnation. A new notice of application for the appointment of commissioners of assessment was published. Upon the return thereof, appellant filed an answer in which she alleged that the court was without jurisdiction to entertain the proceeding. The court overruled this objection, and appointed new commissioners to determine the compensation which should be paid to the owners of the additional land which the city sought to acquire. Appellant appeals from this order.

Notwithstanding the fact that all the land actually needed for the extension of Monroe avenue had already been acquired, and that the street had been opened and was in actual use, and that no part of Cheney place was intended to be used as a part of the new highway, and was not even contiguous thereto, respondent insists that it still has a right to condemn appellant's interest in Cheney place, by virtue of the power granted to it by section 2 of the Rochester City Charter (Laws of 1907, chap. 755, as amd. by Laws of 1920, chap. 431, and Laws of 1921, chap. 524). This section gives to the city power " to take more land and property than is needed for actual construction in the laying out, widening, extending or relocating parks, public places, highways or streets, provided, however, that the additional land and property so taken shall be no more than sufficient to form suitable building sites abutting on such park, public place or street."

This provision was added in 1920 to the Charter of the City of Rochester after the amendment to section 7 of article 1 of the Constitution of this State had been adopted by the People at the general election held on November 4, 1913, and which added to that section the following: " The Legislature may authorize cities to take more land and property than is needed for actual construction in the laying out, widening, extending or relocating parks, public places, highways or streets; provided, however, that the additional land and property so authorized to be taken shall be no more than sufficient to form suitable building sites abutting on such park, public place, highway or street. After so much of the land and property has been appropriated for such park, public place, highway or street as is needed therefor, the remainder may be sold or leased." This provision was continued under the amendment to

said section of the Constitution, adopted on November 4, 1919, and by the amendment adopted on November 8, 1927, was extended to counties.

Concededly, without this authority, the provision in respondent's charter authorizing it to condemn more land than was needed for a public improvement would be invalid.

The application to condemn Cheney place must, I think, be considered as and deemed to be a separate and independent proceeding, notwithstanding the fact that the city adopted the title of the original proceeding, viz., " To acquire land for the extension of Monroe avenue." This title is something of a misnomer, because it is not a movement to acquire lands for the extension of that highway, but rather to condemn excess lands. While section 438 of the City Charter (as amd. by Laws of 1920, chap. 431) gives to the court power to amend, in certain particulars, a condemnation proceeding authorized by the act, and declares that such power should be liberally exercised, no application has ever been made to the court to amend the original proceeding, and no such order has ever been granted. The attempt of the common council to alter its original ordinance does not take the place of an order of the court.

From the very start up to the present time, this second application has been treated as an independent proceeding; a separate judgment, relating only to the acquisition of Cheney place, was entered upon the order of the court overruling appellant's objections; the former judgment relating to the land originally taken was allowed to stand without change; the court appointed new commissioners instead of sending the matter to the commission named in the original order. The city, in its brief, states: " The amended proceeding for the acquisition of Cheney Place, insofar as it called for the acquiring of additional land, was instituted by the city *as a separate proceeding.*" (Italics mine.) So we must treat the present proceeding as entirely distinct and apart from the original one.

At the risk of being wearisome, attention should again be called to the fact that the land which it is here sought to condemn has no relation whatever to the use of the Monroe avenue extension as a public street in the city of Rochester, and forms no part of the property included within that highway, or the lands condemned in the first proceeding. It does not border on the new street, but lies approximately eighteen feet from its northerly boundary. It must also be borne in mind that the extension of Monroe avenue was completed and the street was in public use long before the present proceedings were commenced.

Referring again to the statute, it should be noted that it authorizes the respondent to take more land "than is needed for actual construction in the laying out * * * highways or streets." Nothing is said about acquiring said land after the street has been laid out and opened, and the property necessary therefor has been acquired.

The right to take the property of an individual *in invitum*, which is not to be used and enjoyed by the public as a part of a public improvement itself, is an innovation in the law of eminent domain. In view of this drastic change in the long-established practice of allowing private property to be taken only when it is to be used as a part of some public improvement itself, I do not believe that we should read into this statute, or the constitutional amendment which authorized it, unless the language employed clearly warrants such construction, authority to permit the respondent to condemn this excess land long after Monroe avenue had been laid out and thrown open to the public, and the land necessary therefor had been acquired. I find nothing in the act or the constitutional amendment which indicates any intention to permit subsequent condemnation proceedings to be instituted for the sole purpose of acquiring land for speculative purposes long after the property actually needed for the public improvement itself has been acquired. On the contrary, the last part of the constitutional provision, which legalizes the lease or sale of the excess land after so much thereof as is necessary for the public improvement has been appropriated, clearly indicates that the surplus land must be acquired in connection with that needed for the improvement itself.

There must be some limit placed on the time when surplus lands can be acquired. If this new proceeding to acquire Cheney place can now be maintained, the city can institute other proceedings, five, ten or more years from now, to acquire other lands bordering on the Monroe avenue extension in order that the same may be sold, and the profit used to help defray the expense of this particular improvement. Clearly, such a situation was never contemplated by the People when the amendment to the Constitution was adopted, or by the Legislature when it amended the charter of respondent.

Having reached the conclusion that there is no authority permitting the respondent to take appellant's interest in Cheney place against her will at this late date, it becomes unnecessary to discuss the other interesting questions raised with much force by the appellant, and refuted with equal vigor by the respondent, that the statute itself is not broad enough to permit the taking of lands by condemnation which do not abut upon the new street or park, and that both the statute in question and the amendment to

the State Constitution are repugnant to section 1 of the Fourteenth Amendment of the Federal Constitution.

The order and judgment appealed from should be reversed and the proceeding dismissed.

All concur. Present — Sears, P. J., Crouch, Edgcomb, Thompson and Crosby, JJ.

Order reversed on the law, with costs, and proceeding dismissed, with costs. First finding of fact and the conclusion of law are reversed and a new conclusion of law is made.